IN RE PETITION OF M. E. WINTER AND OTHERS FOR ESTABLISHMENT OF JUDICIAL DITCH NO. 11, WASECA AND BLUE EARTH COUNTIES.
STATE, DEPARTMENT OF NATURAL RESOURCES, BY ROBERT L. HERBST, ITS COMMISSIONER, v. DISTRICT COURT.

208 N. W. 2d 725.

June 1, 1973—No. 43344.

*Warren Spannaus,* Attorney General, *Curtis Forslund,* Solicitor General, and *William G. Peterson,* Special Assistant Attorney General, for appellant.

*Harvey E. Gardner, Nelson, Casey, Tripp & Dow,* and *Byron J. Casey,* for respondent.

Heard before Knutson, C. J., and Rogosheske, Peterson, and Todd, JJ. Reconsidered and decided on the record by the court en banc.

KELLY, JUSTICE.

The state, which was assessed for benefits in an order of the district court establishing Judicial Ditch No. 11 in Waseca and Blue Earth Counties, appeals from the order. The state claims that conditions attached to the permit required to be obtained from the commissioner of natural resources in order to construct the ditch precluded the assessment of benefits to the state resulting therefrom. We remand.

These proceedings were commenced in district court by petitioners under Minn. St. c. 106, the public drainage code, for the establishment of a drainage system. A portion of the proposed ditch is located near Lake Elysian, which is a meandered lake and at one time supported substantial navigable traffic. In 1906, the marshes adjacent to the lake were drained by County Ditch No. 6. Subsequent erosion and unauthorized enlargements of this ditch reduced the level of the lake. As a result, the commissioner of conservation in 1939 established the high-water level of the lake at 1018 feet, mean sea level datum, and directed the construction of a water-control structure or dam.[1] This structure was constructed in 1942 near the southern end of the lake. Below

---

[1] This action was sustained in In re Lake Elysian High-Water Level, 208 Minn. 158, 293 N. W. 140 (1940).

the dam, the lake continued at an artificially lower condition and maintained a fluctuating water level.

Petitioners initiated these proceedings to stabilize the water conditions on their property to the south of Lake Elysian. The drainage system proposed would have a direct effect on the portion of the lake south of the 1942 dam. Minnesota's drainage code requires that, before a meandered lake can be drained in whole or in part, a permit from the commissioner of natural resources must first be obtained. Minn. St. 106.021, subd. 2. Without a permit, the petitioners could not have proceeded with the establishment of this drainage system. Accordingly, an application for such a permit was made and, after a hearing, the commissioner issued a permit under the provisions of Minn. St. 105.45.

In granting the permit, the commissioner attached certain conditions. The only one of any importance here was that a grade stabilization structure be erected approximately 7,200 feet south of the 1942 dam. This structure was to be a variable dam that would permit the state to stabilize the level of the southern portion of the lake. The dam would impound water in a pond of about 205 acres between the two dams with the water level established at 1,015 feet, mean sea level datum. This water control structure was also to be of a type which would allow the state to draw down the impounded water and drain the land between the dams for conservation purposes. Admittedly, no appeal was made from the permit containing this condition.

The state's primary contention on this appeal is that the state cannot be assessed benefits in a drainage project for the restoration of public waters when such restoration would result from the construction of a dam as required by a condition in a permit granted by the commissioner of natural resources. However, the permit did not expressly attach as a condition that the state should not be assessed for any benefits to lands it owned within the project area. In fact, nothing in the statutes gives the commissioner the authority to insert such a condition in the permit. Minn. St. 106.151, contained in the chapter giving jurisdiction

over drainage systems to the district court for "judicial ditches," as in the instant case, or to county boards for county ditches, specifically charges the viewers appointed by the court or board with assessing benefits or damages to lands in which the state has an interest.[2] Yet, the thrust of the state's argument is that something unarticulated and unexpressed in the commissioner's order granting the permit precludes another administrative body charged by law with determining benefits or damages in the establishment of drainage ditches from performing that function. It is undeniable that, if the petitioners' plans had originally included an identical type of water control structure such as required by the commissioner in his permit, the state could not then argue it should not be assessed because the partial restoration of the lake would not result from a condition in the permit. Obviously, if the state could be assessed for damages when the drainage authority required a water control structure, the state should not be freed from assessments merely because it required the device. We hold that the order of the commissioner granting the permit with attached conditions does not ipso facto relieve the state of an obligation to pay for benefits resulting therefrom.

The state argues that the petitioner should have appealed the commissioner's determination if they did not care to accept the conditions in the permit. There appears to be no reason that

---

[2] In proceedings to establish a drainage system entirely within one county (a "county ditch"), that county initially was given jurisdiction over the proceedings. If the drainage system were to be located in 2 or more counties (a "judicial ditch"), the district court was given jurisdiction. Minn. St. 106.031. However, from and after July 1, 1971, jurisdiction for the commencement of proceedings for the establishment of a drainage system to be located in 2 or more counties (now called a "joint county ditch or drainage system"), has been given to the county "containing the largest area of land over which the proposed ditch passes or upon which the improvement is located." The county board of that county shall notify the county boards of the other affected counties, and a "joint county ditch authority" comprising members of the respective county boards shall be selected to conduct the proceedings. Minn. St. 106.015.

would suggest that an appeal should have been taken from the permit in question where that permit and its stated conditions were facially acceptable to the parties in interest. If an appeal had been taken from the commissioner's order pursuant to Minn. St. 105.47, would the notice of appeal have stated—"we appeal from the determination of the commissioner granting a permit conditioned upon the drainage system being built with a variable dam, the grounds of our appeal being that there may be some unexpressed or unarticulated conditions in the permit that are unreasonable and contrary to law"? Our judicial system should not be so lacking in specificity that attorneys would have to dream up such grounds for an appeal.

If the commissioner had expressly added a condition to the permit in question providing that the state not be assessed for any benefits in the drainage system proceedings, it is very likely that some party in interest would have appealed from that determination and in all probability would have contended that such a condition was not only unreasonable, but was beyond the authority and jurisdiction of the commissioner. Such a condition would be a usurpation of the power of the district court and its appointed viewers who are specifically charged with the duty of determining the benefits or damages to state-owned lands.

We are aware that the commissioner's order granting the permit did include language stating that the "permit is permissive only" and "[n]o liability shall be imposed upon or incurred by the State of Minnesota or any of its officers, agents or employees, officially or personally, on account of the granting [of the permit] or on account of any damage * * * resulting from any act or omission of the permittees * * * [relating thereto]." The dissenting opinion interprets this language broadly to preclude imposition of assessments for benefits resulting to the state from a drainage project and concludes that, since the validity of such a condition was not challenged by appeal, it has become the law of the case. This argument assumes that the language was intended to be all-inclusive. Apparently, this argu-

ment never occurred to the state, as it has not contended in its brief or otherwise on this appeal nor in the court below that the commissioner meant to preclude assessment of drainage benefits by inserting this language in the order granting the permit. We believe that such a limitation of liability was meant to apply only to damages and injuries resulting from the actual construction and maintenance of the dam and that in all probability it is a standard clause inserted in all orders of the commissioner granting permits. The liability of the state for benefits does not arise on account of the granting of the permit but only for benefits, if any, derived from the total drainage system. In any event, if such a condition, either expressly or by implication under a broad construction of this clause, is intended to preclude assessments in drainage proceedings, it is beyond the powers and jurisdiction of the commissioner.

In order that the jurisdiction and powers of the commissioner of natural resources, on the one hand, and of the drainage authority (whether it be the county board or the district court) on the other, are not misconceived, it is desirable to analyze their respective powers and duties under the applicable laws, namely, Minn. St. cc. 105 and 106.

Under c. 106, entitled "Drainage," the legislature has seen fit to give all the power to establish drainage systems including necessary control structures to the drainage authority. The proceedings to establish a ditch are initiated by a petition of the majority of the resident landowners involved or by the owners of at least 60 percent of the area of such land.[3] The powers of a drainage authority in connection with the establishment of drainage systems, and the extent to which those powers are limited by requiring a permit from the commissioner of natural resources, are outlined in Minn. St. 106.021, as follows:

"Subdivision 1. The *county boards* of the several counties, and the *district courts* are authorized to make all necessary

---

[3] Minn. St. 106.031, subd. 1.

orders for and cause to be constructed and maintained public drainage systems; to deepen, widen, straighten, or change the channel or bed of any waterway following the general direction thereof * * *; *and to construct all needed dikes, dams, and control works* and power appliances, pumps, and pumping machinery.

"Subd. 2. *The board or court is authorized to drain in whole or in part lakes which have become normally shallow and of a marshy character and are not of sufficient depth or volume to be of any substantial public use; provided no meandered lake shall be so drained except upon the determination of the commissioner of natural resources of the state of Minnesota that such lake is not public waters, or pursuant to the permit of the commissioner as provided in subdivision 3.*

"Subd. 3. When deemed necessary to control flood waters therein, *the board* or *court* is authorized to raise, lower, or establish the height of water in any lake, body of water, or watercourse and *cause to be constructed all necessary structures and improvements to maintain the same for flood control or other public purposes.* Where only a part of a lake is to be drained, it may cause to be constructed dikes or dams for the purpose of holding the water at the height designated by the board or court in that part of the lake not to be drained; *provided, no dam affecting public waters shall be constructed, removed or altered, nor shall the level of any public waters be established, raised or lowered, nor shall any public waters be drained in whole or in part without the authority of the commissioner of natural resources of the state of Minnesota.*

\* \* \* \* \*

"Subd. 4. The petitioners for any public ditch, or the board or court may make application to the commissioner of natural resources for the authority required by subdivision 3 or for the determination of the status of meandered lakes required by subdivision 2." (Italics supplied.)

In the instant case then, the court had complete statutory au-

thority to establish the drainage system with such water control structures as it saw fit (including the type required by the commissioner), subject only to obtaining a permit from the commissioner if the area involved consisted in part of either public waters or a meandered lake. Nothing is contained in c. 106 about the authority of the commissioner to attach conditions to such permits, but fairly read, Minn. St. 105.45 gives that power to the commissioner. However, § 105.45 does not evidence any intent on the part of the legislature to permit the commissioner to attach a condition that would preclude a county board or district court from assessing benefits to state-owned lands.

While § 105.45 does authorize conditional permits, at the same time it limits the kind of conditions or requirements the commissioner may attach in granting permits for drainage systems. For example, "he may require such modifications of the plan as he deems proper to protect the public interest."[4] The statute also allows the commissioner to include such "terms or reservations" relating to the appropriation or use of state waters and the construction or operation of controls as are reasonably necessary for safety and welfare.

In the instant case, the commissioner acted properly in concluding that the permit should be granted upon the condition that the drainage system include a water control structure. However, there is nothing in the language of § 105.45 that could be construed to authorize the commissioner to attach a condition that would preclude the assessing of benefits against the State of Minnesota. Nor is there anything in that statute that gives rise to any inference that the state is to be relieved of assessments for benefits that might arise in part from the condition attached. Nothing in either c. 106, the drainage law, or in c. 105 supports the contention that, where the commissioner grants a permit requiring construction of a grade stabilization structure

---

[4] The "plan" is an obvious reference to the "plans of the applicant" which are referred to previously in the same paragraph of Minn. St. 105.45.

and the creation thereby of a pond area, the drainage authority is without jurisdiction to assess the state for resulting benefits.

The state also contends that an administrative agency may issue conditional permits as well as unconditional ones, citing Rock Island Motor Transit Co. v. Murphy Motor Freight Lines, Inc. 239 Minn. 284, 58 N. W. 2d 723 (1953). In Rock Island, this court determined that the Railroad and Warehouse Commission could impose restrictions in certificates issued by it, specifically basing its decision on the statutory language contained in Minn. St. 1953, § 221.08. Similarly, City of Rochester v. Upman, 19 Minn. 78 (108) (1872), has little or no relevance to the present appeal. In that case, an ordinance required a license for sale of liquor and this court held that a fee could be required for the license.

The district court had the power and could have included in the plan for the drainage system exactly the same type of dam and pool area as was required by the conditional permit. If the application for a permit had contained such a plan, the commissioner without a doubt would have granted the permit, as it obviously meets the standards of § 105.45. Thus, there would have been no such condition in the permit, and there would be no foundation for the state's theory that, because the permit had a condition attached, the state is ipso facto relieved of paying for any assessments for benefits.

If we read § 105.45 in conjunction with the pertinent sections in c. 106 relating to assessing state lands for benefits, it becomes quite clear that the legislature had no intention of giving the commissioner the power to exclude by conditions in permits any assessments for benefits to state lands. Under Minn. St. 106.151, the viewers appointed by the drainage authority are given authority, and in fact·are required by law, to assess benefits and damages to state-owned lands affected by a drainage system. This section requires the viewers to determine benefits or damages to *all* lands affected. It specifically provides:

"Benefits and damages shall be reported on all lands owned by the state the same as upon taxable lands.

\* \* \* \* \*

*"They shall report the benefits and damages resulting to the state of Minnesota and all counties and other municipal corporations resulting from the proposed drainage system."* (Italics supplied.)

That the state may be assessed benefits or awarded damages is also implicit in the provisions of § 106.672 which require that, when drainage proceedings affect a state land or water area devoted to conservational purposes, due consideration must be given to the value of the area for such uses in the assessment of benefits or awarding of damages in the proceedings. Since § 106.672 is clearly applicable to the present case, the conclusion is inescapable that the district court is the authority having jurisdiction to determine benefits to state lands used for conservation purposes.

A comparison should also be made between appeals contemplated by c. 105 and those by c. 106. Section 105.47 provides for appeals by a party in interest from any determination of the commissioner. That statute makes no reference to any appeal from assessments for benefits or award of damages resulting from a permit but only refers to a review of whether the order itself was lawful and reasonable.

On the other hand, the procedure outlined in Minn. St. 106.631 explicitly refers to an appeal from the assessment or award made in connection with c. 106 drainage projects. That section provides in part:

"Subdivision 1. Any party aggrieved thereby, may appeal to the district court from an order of the board or court made in any proceeding and entered upon its record determining any of the following matters:

(1) The amount of benefits determined;

(2) The amount of damages allowed;

(3) Relative to the allowance of fees or expenses in any proceeding."

Other subdivisions of the section indicate that a party can have considered and determined benefits or damages affecting land other than his own and that the issues shall be tried to a jury. The jury's determination on reconsideration stands in the place of the drainage authority's assessments and awards.

From the foregoing discussion relative to the determination of benefits by the viewers or by the jury on appeal, and particularly in light of the provisions relating to state-owned lands, it is difficult to conclude that the legislature intended that the state should be relieved from paying for its fair share of benefits from a drainage system that will stabilize the water level of a lake and would permit drainage of that portion of the lake when desired by the state for conservation and ecological purposes. Where the district court was intended to be the authority having jurisdiction over the proceedings with the duty of determining benefits or damages to state lands used for conservation purposes as provided in Minn. St. 106.672, such jurisdiction cannot be ousted by an unexpressed condition in a permit issued by the commissioner.

The commissioner, in his brief, claims that since the construction of the dam, lower Lake Elysian has covered 58 acres of land. Petitioners dispute this, contending that water sometimes flowed north and that at times one could drive a truck through the area immediately below the 1942 dam. Be that as it may, the new dam would cause 205 acres to be impounded. Thus, this is not a case in which the commissioner was trying merely to preserve the status quo. The water control structure not only will be a dam that will impound water between the two dams, but is a weir type of stop-log structure which will allow the state to drain the impounded water between the dams. This feature will permit the state to dry out the land between the dams to control the growth in that area.

Under Minn. St. 106.631, subd. 5, an aggrieved party may

appeal to the supreme court from a final order or judgment or from any order establishing or refusing to establish a judicial ditch. The state's notice of appeal to this court specifically states it is from the order establishing the ditch. However, the state has stipulated and consented to the establishment of the ditch itself, and the only issues raised or relief requested on this appeal concern the assessment of benefits against the state.

The state's appeal is premature because the court's order confirming the viewers' assessment of benefits against the state is not a final order or judgment. We have recently stated:

"* * * [R]econsideration of specific assessments for benefits and awards for damages by a jury must first be undertaken pursuant to Minn. St. 106.631, and * * * without such proceedings there can be no appeal to this court merely on the basis of asserted error in assessments and awards."

In re Petition of Black, 283 Minn. 86, 88, 167 N. W. 2d 147, 149 (1969). However, even though the appeal to this court was premature because it was not from that portion of the trial court's order establishing the ditch and because there was no final order or judgment as to benefits or damages, we have permitted a discretionary review in this case.

The state has, in fact, appealed to the district court from the assessments made, and it claims it has suffered damages instead of benefits. On this issue, it is entitled to a jury trial and the district court is awaiting the outcome of the appeal to this court before proceeding to trial.

Because of our decision that the appeal is premature, it is unnecessary to consider the state's second issue, i.e., whether the state receives any benefit from the partial restoration of the level of Lake Elysian which has allegedly been drained illegally. That issue should first be decided in the appeal to the district court.

We are being asked to decide issues in a partial vacuum. Hopefully, if the case is tried de novo before a jury, facts could be developed which would show the condition of the lakebed prior to the construction of the proposed drainage system and the con-

dition that would be expected thereafter. We now have statements in the briefs that are not adequately supported in the record. The state has denied that the public will be benefited by establishing a controlled lake level south of the 1942 dam and asserts here and in the court below it has suffered damages of $25,000. We have concluded that the second issue may be so interrelated with the issue reserved in the court below that a complete factual setting would be helpful.

The state's third issue on this appeal is "[whether] the State of Minnesota, as owner of navigable lakebeds in trust for the people, [is] subject to assessments for purported improvements of said lakebeds?" We believe that the foregoing discussion relative to the assessment of benefits to state-owned lands in drainage projects authorizes a drainage authority to subject the state to assessments for improvements in the lakebed of navigable lakes. Minn. St. 106.151 clearly mandates that the viewers report the benefits and damages to the state resulting from drainage systems to be established.

In addition, Minn. St. 106.672 specifically provides that when drainage proceedings affect any land or water area owned by the state and held or used for conservation purposes, benefits shall be assessed or damages awarded. In fact, the state has made a claim for damages in the amount of $25,000. It would be strange and inconsistent to hold that the state, in an appropriate case, could recover damages but could not be assessed for benefits. Presumably, as a corollary to that proposition, benefits could not even be offset against damages, which contradicts the provisions of Minn. St. 106.672. We hold that Minn. St. 106.672 is applicable as to the issues yet to be decided in the court below.

We remand the case to have the issue of benefits or damages determined in a trial by jury as explicitly provided by statute.

Remanded.

TODD, JUSTICE (dissenting).

I dissent from that part of the majority opinion holding that the commissioner cannot attach conditions to a permit required

for the construction of a drainage ditch which affects public water and at the same time limit the liability of the state as a condition to the issuance of such permit.

The majority opinion is premised on the statement that the commissioner-issued permit did not attach as a condition that the state should not be assessed for any benefits to lands it owned within the project area, which included the lake area of Lake Elysian. This statement attempts to obviate the order of the commissioner of April 22, 1971, where the permit was issued "under the terms and conditions set forth in the Conclusions herein." Conclusion No. 14 provides in part:

"This permit is permissive only. No liability shall be imposed upon or incurred by the State of Minnesota or any of its officers, agents or employees, officially or personally, on account of the granting hereof * * *."

Admittedly, the language does not use the word "assessments," but the clear and plain meaning thereof would prohibit the imposition of the assessments proposed herein. The majority concedes that no appeal was ever made from that order. Consequently, the issues of the reasonableness or unreasonableness of this condition is not before us, as it could only be raised in an appeal from the commissioner's order of April 22, 1971. Nevertheless, the majority opinion seeks to analyze and dispose of the question of reasonableness of the condition. If that issue were properly before us, I would articulate my reasons for disputing the conclusions reached by the majority as to the respective powers of the commissioner and the drainage authority. Suffice to say that I am of the opinion that the majority substantially misconstrues those powers and transfers to the drainage body, whether it be the court or the county board as provided by statute, such statutory authority as is clearly reserved to the commissioner.

I agree with that portion of the majority opinion which holds that the appeal as presently postured should be remanded to the district court for a trial by jury on the issue of damages. However, any such trial should be properly subject to the conditions

imposed by the commissioner in his order of April 22, 1971. It is not for the court or the jury below, or for this court on any appeal following the trial, to question the reasonableness of the condition imposed by the commissioner. This condition has become the law of this case, and in my opinion clearly prevents the imposition of any assessment for benefits against the State of Minnesota by reason of the construction of Judicial Ditch No. 11, which could not have been constructed without first obtaining the permit.